IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES WARD,                     :

                         :

     Plaintiff,         :

                         :

vs.                       :     CIVIL ACTION 14-515-M

                         :

CAROLYN W. COLVIN,        :

Commissioner of Social Security,  :

                         :

     Defendant.         :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was heard on June 29, 2015.  After considering the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further administrative procedures consistent with this Court's Order.

This Court is not free to reweigh the evidence or

substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Ward was twenty-nine years old, had completed an eleventh-grade education (Tr. 63), and had previous work experience as a milk receiver for a tank truck, net fisherman, and a forklift operator (Tr. 78). In claiming benefits, Plaintiff alleges disability due to a closed head injury, right hand and shoulder injuries, and a depressive disorder (Doc. 12).

The Plaintiff filed applications for disability benefits and SSI on June 14, 2010, asserting a disability onset date of May 14, 2010 (Tr. 160-72; *see* Tr. 15). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not return to his past

2

relevant work, there were specific medium-exertion jobs that he could perform (Tr. 15-25).  Plaintiff requested review of the hearing decision (Tr. 7-11) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Ward alleges that:  (1) The ALJ did not properly consider his pain and limitations; (2) the ALJ improperly rejected the opinions of examining physicians; (3) the ALJ did not state what weight he gave certain evidence; (4) the ALJ did not properly develop the record; and (5) the Appeals Council failed to properly review evidence submitted to it (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 14).  The relevant evidence of record follows.

On January 21, 2006, Ward went to the DCH Regional Medical Center ER for treatment of multiple scalp lacerations after being pistol-whipped, resulting in a closed head injury (Tr. 274-87).  Plaintiff also had moderate tenderness in the right wrist and right proximal forearm.  CT's of the head and cervical spine were normal.  There were no significant bone abnormalities in the right forearm.

On June 4, 2010, Plaintiff was treated at Uniontown Health

Center for a snake bite on his right leg (Tr. 291-95).

On September 24, 2010, Dr. John C. Simmons examined Ward whose chief complaint was memory loss and poor concentration as a result of his previous pistol-whipping and concussion; he also experienced right hand pain and swelling, right shoulder and neck pains, and chronic head pain (Tr. 297-301).  Simmons noted swelling in the right hand and wrist as well as decreased grip strength and dexterity; he also had decreased range of motion (hereinafter *ROM*) in the right wrist, arm, and forearm.  It was the Doctor's opinion that Ward "would have difficulty performing work related physical activities using right arm or hand including activities such as lifting, carrying, etc. [Plaintiff] would also have difficulty with any work requiring manual dexterity using right hand.  Also, any work requiring use of his memory would be difficult" (Tr. 299).  Simmons completed an ROM chart showing the diminished capacities (Tr. 300-01).

On October 29, 2010, Dr. E. Russell March, Jr. reviewed Plaintiff's medical record and, without benefit of examination, determined that he could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; he could sit and stand/walk for six hours each during an eight-hour day (Tr. 304-11).  Ward would be limited in operating hand controls.  Ward

4

could climb a ladder, rope, or scaffolds only occasionally but could frequently climb a ramp or stairs as well as balance, stoop, kneel, crouch, and crawl.  Though Plaintiff would be limited in reaching or with gross manipulation, fine manipulation was not a problem.

On November 15, 2010, Psychologist Richard S. Reynolds examined Ward who provided his own psychological and medical history (Tr. 313-15).  The Psychologist noted Plaintiff was oriented in four spheres; mood was "down" and affect was mildly dysthymic.  Thought content was logical and associations were tight; recent and remote memory, judgment, insight and decision-making abilities were intact.  It was Reynolds's opinion that Plaintiff's "ability to understand, carryout, to remember instructions, and to respond appropriately to supervision, coworkers, work pressures in a work setting appear intact.  Mr. Ward may be experiencing some mild depression secondary to medical issues, however, [sic] there is no significant psychological impairment noted or reported by the claimant" (Tr. 315).

On December 20, 2010, Psychologist Joanna Koulianos reviewed Plaintiff's medical record and, without benefit of examination, completed a Psychiatric Review Technique Form

indicating that Plaintiff suffered from an Adjustment Disorder with a depressed mood (Tr. 316-29).  The Psychologist further indicated that Ward would have only mild limitations in his daily activities, maintaining social functioning, and in maintaining concentration, persistence, or pace.

On September 7, 2011, Psychologist Nina E. Tocci examined Plaintiff, finding him oriented in four spheres; he had a good fund of information and comprehension, but his ability to abstract was impaired (Tr. 334-37).  Ward's thought content was logical and appropriate to mood and circumstances.  He rated his pain as ten, daily, on a ten-point scale.  Plaintiff had some insight, fair social judgment, and appeared to be functioning within the borderline range of intellectual ability.  Tocci diagnosed him to have a Depressive Disorder, NOS and determined he had only a poor prognosis; she indicated that he currently had—and had had for a year—a GAF of 60.[1]  The Psychologist stated that she had reviewed the record in reaching her conclusions and recommended that Ward be evaluated by a neurologist as he had "described symptoms that are consistent with [Traumatic Brain Injury) and other symptoms" (Tr. 336).

---

[1]A GAF score between 61 and 70 indicates "[s]ome symptoms OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal

On September 12, 2011, Dr. Stephen J. Robidoux examined Plaintiff for complaints of right hand and head swelling; he was oriented in three spheres with intact past and present memory (Tr. 339-43).  Ward had full ROM throughout his body; the examination was normal.  Robidoux indicated that there was no explanation for Plaintiff's assertion that he could not feel fine touch on his entire right arm.  The Doctor said he had no limitations in "sitting, standing, walking, running, lifting, carrying, pushing, pulling, climbing, squatting, handling objects, using hand and foot controls, talking, listening and travel" (Tr. 342-43).

On September 29, 2011, Psychologist Donald E. Hinton reviewed Ward's medical record and, without benefit of examination, completed a Psychiatric Review Technique Form indicating that Plaintiff had been diagnosed to have had a closed head injury and a depressive disorder (Tr. 344-57). Hinton determined that he had mild limitations in his daily activities and moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace; Ward had never had an episode of decompensation of extended duration.  On the same date, the Psychologist completed

relationships."  *See* https://depts.washington.edu/washinst/Resources/CGAS/GAF%20Index.htm

a Mental Residual Functional Capacity Assessment that Plaintiff would be moderately limited in his ability to understand, remember, and carry out detailed instructions and in maintaining attention and concentration for extended periods (Tr. 358-61). Likewise, Ward would be moderately limited in interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting.  Hinton also found Plaintiff capable of doing the following:

> A) Able to understand and recall simple instructions, not detailed.
> B) Able to carry out simple tasks adequate to complete 8 hr work days provided customary breaks are given.  Can maintain attention and concentrate 2+ hrs with customary breaks.
> C) Able to work with public and co-workers in a casual capacity and can accept non-threatening supervision with supportive feedback.
> D) Demands at work should mostly be routine.

(Tr. 360).

On April 30, 2012, Dr. Jack Bankhead, reviewed Plaintiff's medical record and, without benefit of examination, completed a case analysis indicating that Ward was not qualified for disability payments (Tr. 362-63).

8

On December 11, 2011, Hale County Hospital reported that Ward had been in an altercation and was hit in the back of the head and left eye with an iron rod (Tr. 373-80).  On September 15, 2012, Ward complained of a headache and swelling on the right side of his head, related to his sinuses (Tr. 365-72).

This concludes the Court's summary of the record evidence.[2]

Ward first claims that the ALJ did not properly consider his testimony of pain and limitation.  He more specifically claims that the ALJ either misunderstood or mischaracterized the evidence in reaching her decision (Doc. 13, pp. 9-13).

The standard by which Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to

---

[2]One exam will be reviewed later in connection with Ward's claim that it was not properly considered by the Appeals Council.

produce the pain was a factual question to be made by the
Secretary and, therefore, "subject only to limited review in the
courts to ensure that the finding is supported by substantial
evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.),
*vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated
sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).
Furthermore, the Social Security regulations specifically state
the following:

> statements about your pain or other symptoms
> will not alone establish that you are
> disabled; there must be medical signs and
> laboratory findings which show that you have
> a medical impairment(s) which could
> reasonably be expected to produce the pain
> or other symptoms alleged and which, when
> considered with all of the other evidence
> (including statements about the intensity
> and persistence of your pain or other
> symptoms which may reasonably be accepted as
> consistent with the medical signs and
> laboratory findings), would lead to a
> conclusion that you are disabled.

20 C.F.R. § 404.1529(a) (2014).

The ALJ found Ward's impairments could be expected to cause
symptoms, but that his "statements concerning the intensity,
persistence and limiting effects of these symptoms [were] not
entirely credible" (Tr. 22).  As support, she pointed to a
report Plaintiff completed saying that he could take care of his

personal needs, drive, do his personal shopping, and handle his
financial affairs (Tr. 22; *cf.* Tr. 218-25).

The Court notes that the ALJ also acknowledged Ward's
statements that he did not prepare meals or do any house- or
yard-work; she reported his statements that he had fished in the
past, but no longer could because of his right hand pain (Tr.
22; *cf.* Tr. 218-25).  The ALJ relayed Ward's testimony that his
impairments affected his ability to lift, stand, reach, walk,
hear, complete tasks, concentrate, understand, use his hands,
and get along with others and that he had memory problems, could
not pay attention or follow instructions, and did not handle
stress or routine changes well.  In another questionnaire, Ward
indicated that he had difficulty buttoning his shirt and pulling
up his pants, shaving, and grooming with his right hand; it hurt
his right hand putting the car in gear to drive, but he just
dealt with it (Tr. 22; *cf.* Tr. 212-24).

Plaintiff correctly points out, though, that the ALJ, in
summarizing the evidence, reported some of it incorrectly (Doc.
13, pp. 9-11).  For example, she cited a report by Psychologist
Reynolds for a statement made by Ward that he played video games
and played with his dog (Tr. 22; *cf.* 314).[3]  Reynolds actually

─────────────

[3]The Court notes that Reynolds's report contradicts Plaintiff's

11

reported that Plaintiff had stated that he used to play video games, but no longer did because of his hand pain (Tr. 314); the ALJ also failed to acknowledge Ward's testimony at the hearing that he could no longer play those games (Tr. 73). The ALJ's use of this video game evidence to discredit Ward was error.

In another instance cited, the ALJ reported that Plaintiff "was able to prepare simple meals such as sandwiches" (Tr. 22). Ward reported that he could prepare sandwiches, but did not indicate an ability to put any other meal together (*see* Tr. 207, 213; *cf.* Tr. 220); he did testify, though, about barbequing (Tr. 67). The Court sees no slight here.

Ward also complains that although the ALJ noted that he regularly attended sporting events, she failed to note that he needed to be reminded of the events and someone to accompany him (Doc. 13, p. 9; Tr. 22; *cf.* Tr. 222). While Plaintiff's assertion is true, it does not diminish the fact that he was participating in the activities.

Ward also took issue with the ALJ's statements describing "daily headaches with dizziness caused by running" (Tr. 23; *cf.* Tr. 209-10). The Court finds it unlikely that the ALJ—or anybody else for that matter—thinks that Plaintiff "runs every

statement that he did not take care of any pets (*see* Tr. 219).

12

day and causes himself to have headaches" (Doc. 13, p. 10).

Plaintiff dislikes the ALJ's characterization of his unsuccessful work attempt in that she concluded that it "indicate[d] that the claimant's daily activities have been somewhat greater than the claimant has generally reported" (Tr. 23; Doc. 13, p. 10). Evidence shows that Ward testified that he had worked full-time, pumping milk from an eighteen-wheeler to a silo, but he received help from a brother-in-law and co-worker because he could not do it all himself, though no other employee received similar help (Tr. 64, 72-73); the ALJ did not report this accommodation. Plaintiff argues that this testimony enhances his credibility, rather than diminishes it as found by the ALJ. The Court must confess that it can make no sense of this particular argument.

Ward also argues against the ALJ's characterization of his work history as "significant" during the four-year period preceding his onset date during which Ward had been experiencing the same problems for which he now claims disability (Doc. 13, pp. 10-11; *cf.* Tr. 23). While the Court would not characterize that work history as significant (*see* Tr. 179-81), the Court finds the ALJ's word choice harmless. The ALJ correctly pointed out that the evidence shows that Ward was able to work, to some

13

degree, for four years before asserting disability, with no apparent change in impairment or symptomatology.

Ward further asserts that the ALJ's discounting of his pain and limitations is misplaced in that she failed to note his repeated assertions that he lacked money or insurance to obtain treatment (Doc. 13, p. 11; *cf.* Tr. 23).  The record reflects Plaintiff's testimony concerning his lack of resources before the ALJ (Tr. 67, 74) and to examiners (Tr. 334, 384).  The Eleventh Circuit Court of Appeals has held that poverty excuses noncompliance with medical treatment.  *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).

The ALJ's decision is silent as to Ward's assertions of an inability to pay.  The Government attempts to correct this oversight in asserting that Plaintiff once received care for a snakebite from Uniontown Health Clinic, "a medical center offering free or discounted health services to individuals who qualify;" Defendant goes on to point out that Ward had no complaints at the ER besides the snakebite (Doc. 14, pp. 5-6; *cf.* Tr. 291-94).[4]  While the ALJ—instead of the Government playing cleanup—should have reached this conclusion, it appears that health care was available to Ward, but he did not use it.

_____

[4]As support, the Government cites the following:  http://free-

The Court finds Plaintiff's argument that the ALJ did not properly consider his claims of pain and limitation to be without merit.  Though there is error in the decision, it is, at most, even cumulatively, harmless.

Plaintiff next claims that the ALJ improperly rejected the opinions of two examining physicians, specifically referencing the reports from Dr. Simmons and Psychologist Tocci (Doc. 13, pp. 13-14).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[5] *see also* 20 C.F.R. § 404.1527 (2014).

In her determination, the ALJ discounted those two opinions because she found them "grossly inconsistent with the lack of supporting medical evidence and stated activities of daily living (Exhibit B9E and B6F), as well as inconsistent with the professional opinions of Dr. Reynolds, Dr. Robidoux, and Dr. Hinton" (Tr. 23).

The evidence shows that Dr. Robidoux's physical examination

---

clinics.com/clinic/uniontown-health-center-uniontown-alabama-36786/
    [5]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions

is at odds with that of Dr. Simmons regarding Ward's use of his right arm/wrist; while Simmons found that Plaintiff would have difficulty performing activities with his right arm and hand (Tr. 299), Robidoux placed no restrictions on him at all (Tr. 342-43).  X-rays, dating from the time of the injury, showed nothing abnormal (Tr. 277).

Psychologist Tocci examined Ward and indicated that he was functioning at the borderline range of intelligence ability and had non-specified depression; though his prognosis was poor, Tocci did not indicate that his impairments would keep him from working (Tr. 336).  Psychologist Reynolds examined Plaintiff and determined that although he had mild depression, there was no psychological reason he could not work (Tr. 315).  Psychologist Hinton did not examine Plaintiff in determining that he had had a closed head injury and a depressive disorder but could work within certain specified, but not marked or extreme, limitations (Tr. 358-60).  Ward argues that "[t]here is no inconsistency between Dr. Tocci's findings and the opinion of non-examiner Dr. Hinton" (Doc. 13, p. 13).  The Court acknowledges the similarities of their reports, pointing out that Hinton clearly found Plaintiff able to work.

---

of the former Fifth Circuit rendered prior to October 1, 1981.

The ALJ discounted Tocci's and Simmons's reports also as being inconsistent with Ward's daily activities.  The Court has reviewed those activities—and the ALJ's assessment of them—in discussing the prior claim and found support for her conclusion that Ward's testimony was not fully credible.  Likewise, although the Court does not find the conclusions of Tocci and Simmons "grossly inconsistent" with the balance of the record, there is substantial support for the ALJ's decision to give greater weight to the other evidence.

Plaintiff next asserts that the ALJ did not state what weight he gave certain evidence, specifically pointing to the reports of three non-examiners, Drs. March and Bankhead and Psychologist Koulianos.  Ward asserts that March's and Bankhead's opinions supported Dr. Simmons's conclusions (rejected by the ALJ) and that Koulianos's report was based on the report of Dr. Reynolds (given weight by the ALJ) (Doc. 13, pp. 14-15).

The Court notes that the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The Court previously summarized the report of Dr. March

17

(Tr. 304-11) and now finds that the conclusions there are less restrictive than the ALJ's determination of Ward's residual functional capacity (Tr. 20).  Dr. Bankhead's report consisted of little more than a recitation of the evidence he reviewed, his only conclusion being that Plaintiff was not qualified for disability payments (Tr. 362-63); this is consistent with the ALJ's determination.  The report completed by Koulianos found only mild limitations (Tr. 316-29), consistent with the ALJ's decision.  The Court finds that the ALJ committed error in not reporting—and weighing—this evidence, but finds it harmless as its inclusion would not have changed her conclusions.

Plaintiff next claims that the ALJ did not properly develop the record.  Specifically, he points to Psychologist Tocci's recommendation that Ward be evaluated by a neurologist as he had "described symptoms that are consistent with [Traumatic Brain Injury) and other symptoms" (Tr. 336; Doc. 13, pp. 15-16).  Ward also points to his own motion for an examination by a neurologist (Tr. 270), left unaddressed by the ALJ.

The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  However, the ALJ "is not

18

required to order a consultative examination as long as the record contains sufficient evidence for [her] to make an informed decision." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007) (*citing Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)).

In this action, the ALJ obtained consultative examinations by Dr. Simmons (Tr. 297-301), Psychologist Reynolds (Tr. 313-15), Psychologist Tocci (Tr. 334-37), and Dr. Robidoux (Tr. 339-43).  In addition to that, he had non-examiners Dr. March (Tr. 304-11), Psychologist Koulianos (Tr. 316-29), Psychologist Hinton (Tr. 344-57), and Dr. Bankhead (Tr. 362-63) review the record and report their findings.[6]  Additionally, a Vocational Expert testified at the hearing (Tr. 78-84).  The Court finds that the evidence generated in those reports provide substantial evidence for the ALJ's conclusion that Ward was not disabled.

Ward lastly claims the Appeals Council failed to properly review the evidence generated by Neuropsychologist John R. Goff's examination of April 22, 2013 (Doc. 13; *see* Tr. 381-90). The record shows that Ward submitted the evidence the same day the ALJ's decision was entered (Tr. 25, 31).  Its review passed to the Appeals Council that considered it, but found no basis

---

[6]The Court again notes the ALJ's failure to acknowledge the

19

for changing the ALJ's decision (Tr. 2).  The Court's review of
that evidence follows.

On April 22, 2013, Neuropsychologist John R. Goff performed
an examination after reviewing the record evidence and found
Plaintiff oriented as to time, place, and person (Tr. 381-90).
He administered the Victoria Symptom Validity Test, the results
of which Goff found valid; however, the personality assessment
results were considered invalid because of a lack of
understanding.  On the Wechsler Adult Intelligence Scale (WAIS-
IV), Ward scored a verbal comprehension of 68/2, perceptual
reasoning of 65/1, working memory of 74/4, and processing speed
of 79/8; the first two fell within the mildly retarded range
while the latter two fell within borderline range of
intelligence.  The full scale IQ score was 65 and the General
Ability Index was 63, both in the mildly retarded range; Goff
voiced his belief that the scores were valid.  The Reitan-
Indiana Aphasia Screening Test demonstrated primitive
handwriting, poor spelling, reading at the fourth-grade level,
and the ability to perform simple math.  Grip strength was half
of what was expected on the left and only twenty percent on the
right; dexterity measured below the first percentile, showing

reports of March, Koulianos, and Bankhead.

that Ward had troubled hands and arms.  Plaintiff received

normal scores on a test of visual motor problem solving skills;

he had very low scores on the Wechsler Memory Scale (WMS-III).

The Wide Range Achievement Test (WRAT-IV) revealed reading at

the mid-fifth-, math computation at the beginning fourth-, and

spelling at the sixth-grade level.  Goff stated that it was

"possible that this man has always been functioning within the

mildly retarded range of psychometric intelligence but we cannot

be sure about that and without some additional information and

workups it is pretty difficult to say" (Tr. 387).  He further

stated that he thought Ward's right arm pain was real and that

he was not a malingerer.  Finally, the Psychologist noted:

> During this examination he was able to
> understand, follow and remember simple
> instructions.  He has difficulties with
> complex instructions and with remembering
> instructions in general.  He has more
> problems carrying out instructions
> particularly if he has to use his dominant
> hand and arm which is weak and mal-dexterous
> and affected by pain.  He would be seen as
> preoccupied with his discomfort and
> problematic in terms of memory by
> supervisors, co-workers and others.  These
> physical difficulties represent impediments
> to his ability to deal with the stresses and
> pressures of the workplace as well.

(Tr. 387).  Goff went on to find Ward functioning within the

mildly retarded range of psychometric intelligence, likely representing a decline from previous functioning.  The Psychologist also completed a Medical Source Opinion Form (Mental) indicated that Plaintiff was markedly limited in his ability to understand detailed or complex instructions and respond to customary work pressures and was extremely limited in carrying out simple, detailed, or complex instructions and in maintaining attention concentration or pace for periods of at least two hours (Tr. 389-90).  It was Goff's opinion that Ward had demonstrated deficits in adaptive functioning in work, health, and functional academic skills before he turned twenty-two years old.

With regard to a claim that the Appeals Council has not properly considered new evidence, the Eleventh Circuit Court of Appeals has stated the following in an unpublished decision:

> Generally, a claimant is allowed to present new evidence at each stage of this administrative process.  *See* 20 C.F.R. §§ 404.900(b), 416.1470(b); *Ingram v. Comm's of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  The Appeals Council has the discretion not to review the ALJ's denial of benefits.  20 C.F.R. §§ 404.970(b, 416.1470(b).  However, the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the administrative law judge hearing decision" and must review the case if "the

> administrative law judge's action, findings,
> or conclusion is contrary to the weight of
> the evidence currently of record." *Id.* The
> new evidence is material, and thus warrants
> a remand, if "there is a reasonable
> possibility that the new evidence would
> change the administrative outcome." *Hyde v.
> Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).
>     When a claimant properly presents new
> evidence, and the Appeals Council denies
> review, the Appeals Council must show in its
> written denial that it has adequately
> evaluated the new evidence. *Epps v. Harris*,
> 624 F.2d 1267, 1273 (5th Cir. 1980). If the
> Appeals Council merely "perfunctorily adhere
> [s]" to the ALJ's decision, the
> Commissioner's findings are not supported by
> substantial evidence and we must remand "for
> a determination of [the claimant's]
> disability eligibility reached on the total
> record." *Id.*

*Flowers v. Commissioner of Social Security*, 441 Fed.Appx. 735,

745 (11th Cir. 2011).

In this action, Ward submitted evidence for consideration

the same day that the ALJ issued her determination. There was

no finding by the Appeals Council that the evidence was

improperly submitted (*see* Tr. 1-5); the Government has made no

such argument either (*see* Doc. 14, pp. 11-12). The Court finds

that the evidence was properly submitted.

As the Neuropsychologist's report is dated before her

decision was entered, and was filed on the date of that

decision, there is no debate that the evidence "relates to the

period on or before the date of the [ALJ's] hearing decision."
So the question for the Court is whether "there is a reasonable
possibility that the new evidence would change the
administrative outcome."

Goff's examination included psychological testing, not
previously performed, resulting in a mild mental retardation
diagnosis.  The Court finds nowhere else in the record any
reference to the possibility that Ward was mentally retarded;
the psychological evaluations pre-dating Goff's testing all
suggested borderline intellectual functioning.  Though Ward had
not sought disability benefits on the basis of mental
retardation, these test scores now raise the possibility of such
a finding.

Goff also performed tests demonstrating decreased hand grip
strength and dexterity bilaterally.  The significance of this
evidence is that it corroborates the findings of Dr. Simmons who
also noted decreased grip strength, dexterity, and ROM issues.
Simmons's conclusions were rejected by the ALJ in favor of those
of Dr. Robidoux; his examination makes no findings regarding
Plaintiff's grip strength (*see* Tr. 339-43).

The Court finds that the evidence submitted by Goff is
material.  While the Court is well aware that it cannot reweigh

the evidence of record, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), the Court finds, under *Flowers*, that there is a reasonable possibility that the evidence submitted would have changed the administrative result.  As the Appeals Council did not explain why this evidence would not have made any difference in the ALJ's decision, the Court finds that the Council did not properly consider it.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and that this action be **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the purpose of reviewing this newly-submitted evidence.  Judgment will be entered by separate Order.

DONE this 29th day of June, 2015.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE